MILNER HOTELS, INC., *v.* EHRMAN.

1. VENDOR AND PURCHASER—HOTELS—CONTRACTS—POSSESSION.

Under circumstances shown, possession under executory land contract for sale of hotel and contents was to be given immediately upon execution thereof and making of down payment notwithstanding provision as to possession which had been incorporated in preliminary contract was inadvertently omitted from final contract.

2. SAME—HOTELS—OFFER AND ACCEPTANCE—SUBSEQUENT NEGOTIATIONS.

Acceptance of definite written offer of defendant vendor of hotel property, as modified by his two subsequent letters, *held,* to have been made substantially within the terms thereof notwithstanding there were some later negotiations that were perhaps indefinite because of defendant's tactics for purpose of terminating the original agreement or forcing additional modifications.

3. SPECIFIC PERFORMANCE—LAND CONTRACT—INSURANCE.

In suit for specific performance of agreement to sell hotel and contents, provision of decree ordering that matter of insurance be treated in accordance with original contract was proper notwithstanding plaintiff purchaser had once suggested a different method.

4. VENDOR AND PURCHASER—LAND CONTRACT—SPECIFIC PERFORMANCE—MINOR OMISSIONS.

While provisions as to defeasance, insurance, repairs, and payments of taxes might properly have been included, they are not essential to the validity, or decree for specific performance, of a land contract, where said agreement is definite as to parties, property, consideration, terms and time of performance.

5. SPECIFIC PERFORMANCE—LAND CONTRACT—PERSONAL PROPERTY.

Specific performance of a contract to deed land cannot be defeated because the contract includes personal property.

Stipulation for liquidated damages, contained in contract, does not bar specific performance, see 2 Restatement, Contracts, § 378.

6. SAME—LIQUIDATED DAMAGES—INTENT.

A stipulation in regard to liquidated damages does not preclude a suit for specific performance unless it appears from the whole contract that it was the intention of the parties that the right to pay the stipulated sum or perform the contract should be optional.

7. VENDOR AND PURCHASER—RETURN OF DEPOSIT—LIQUIDATED DAMAGES.

A provision in a preliminary contract relative to the conveyance of land for return of deposit made by the purchaser is not the equivalent of the payment of liquidated damages.

8. SAME—SPECIFIC PERFORMANCE—ACCOUNTING—POSSESSION—PROFITS.

Purchaser under land contract for sale of hotel which included provision for sale of its contents was entitled to specific performance and accounting for loss of profits where vendor refused to carry out contract at time agreed upon and by keeping possession was enabled to make a large profit.

9. SPECIFIC PERFORMANCE—POSSESSION—DAMAGES—INTEREST.

Plaintiff, purchaser of hotel and contents, *held*, entitled to specific performance of an executory land contract and award of damages of $400 a month from time when possession was improperly withheld with interest from same date on balance of unpaid purchase price less tender of down payment theretofore made.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted June 10, 1943. (Docket No. 62, Calendar No. 42,353.) Decided November 29, 1943. Rehearing denied January 13, 1944.

Bill by Milner Hotels, Inc., a Michigan corporation, against John Ehrman for specific performance of a contract to sell a hotel. Decree for plaintiff. Defendant appeals. Modified and affirmed.

*Howard, Howard & Howard,* for plaintiff.

*Jackson, Fitzgerald & Dalm* and *Roscoe G. Goembel,* for defendant.

BUTZEL, J.   Plaintiff Milner Hotels, Inc., in 1941 owned and operated 153 or more hotels.   Defendant John Ehrman owned a hotel in Kalamazoo, Michigan, known as the Rickman Hotel, a modern, fireproof, eight-story building containing 75 rooms. Defendant listed it for sale with a realtor whose brother-in-law, an attorney, drafted a preliminary contract dated April 8, 1941, contemplating the execution of a final contract for the sale of the hotel property and contents.   After being signed by defendant in duplicate the preliminary contract was mailed to plaintiff who signed it.   The contract was complete in its terms though a final contract was to be executed thereafter.   It contained a distinct offer to sell the hotel and contents on an executory contract and defendant's acceptance thereof at least showed his approval of the terms which were to be embodied in the final contract.   It was agreed that the final contract was to be in the nature of a title-retention contract as to the personal property as well as the real estate.   The preliminary contract provided that possession was to be given to plaintiff when the final purchase contract was executed and this was to be within 30 days from the date of the agreement.   It further provided for the sale to plaintiff at cost of food, food stuffs and merchandise in the hotel.   The mortgage on the property was to be paid by defendant.   The purchase price was the sum of $80,000, $18,500 to be paid on execution of the final agreement, and the balance to be paid in serial payments with interest at the rate of 6 per cent. per annum.   Provisions contained in a printed land contract form were to be incorporated in the final agreement.   The parties agreed to comply with the Michigan bulk sales act, 2 Comp. Laws 1929, § 9545 *et seq.* (Stat. Ann. § 19.361 *et seq.*).   Another clause provided that plaintiff deposit with defend-

ant the sum of $5,000 as earnest money to apply on the purchase of the property, such sum to be considered part of the down payment on the final purchase agreement which was to be executed within 30 days from date of the preliminary contract, and that "if the said final purchase contract is not executed within the time herein provided for through the default of first party, then said second party shall be entitled to the return of said $5,000. In the event that said final purchase contract is not executed within the time herein provided by reason of default on the part of second party hereto, then first party shall be entitled to retain said deposit of $5,000 as stipulated damages for failure of said second party to perform this contract."

Another clause stated that all licenses held by defendant for the sale of liquor, wine or beer would be included in the personal property and they were to be assigned to plaintiff upon execution of the final agreement. Plaintiff was to pay the costs of insurance, licenses and bonds for the unexpired period. Other clauses in the agreement not herein set forth do not affect the issues in the case.

On April 24, 1941, defendant wrote to plaintiff that he would try to find another tenant to take over the sale of foods and liquors and that should he fail to find such tenant, he would dispose of the inventory of food and liquor himself at no cost to plaintiff. On July 14, 1941, which was over two months after the agreement was entered into, defendant further modified the agreement by authorizing the exclusion therefrom of certain equipment, as listed, located in the beer and wine store, lobby, club room and kitchen, and also all liquor, beer, wine and club licenses. For this reason he reduced the purchase price from $80,000 to $78,000, the down payment from $18,500 to $16,500. He also authorized strik-

ing out from the agreement the provision making the balance due on the final purchase contract in 12 years. He added a postscript to his letter as follows:

"Also unless the agreement dated April 8, 1941, as herein modified is signed by you within 30 days from the date hereof, same shall be considered cancelled."

Negotiations in regard to minor details continued. Plaintiff made a futile effort to secure from defendant a lower interest rate. On August 12, 1941, one day before the expiration of the 30-day limit authorized in the postscript of the letter of July 14, 1941, the parties and their attorneys met in the office of defendant's attorneys. Defendant demanded a lease of the club rooms and the beer and wine store in the hotel. Plaintiff's attorney, upon calling up his client in Detroit, secured permission to give a 90-day lease on the club rooms and a two-year and 8-month lease on the store. In the discussion plaintiff's representative asked that provision be inserted in the final agreement for notice of default by registered mail and for 60 days' time in which to cure default; that defendant accept insurance certificates instead of insurance policies as provided for in the preliminary contract, and that possession be given it on September 1, 1941. Defendant in turn insisted that plaintiff pay a tax against the property for the municipal parking lot. The broker had previously offered to pay the instalments which had accrued. Defendant also asked that two separate contracts be drawn, one for the real estate and one for the personal property, but plaintiff stated that the preliminary draft provided for only one contract covering both the real and personal property.

At the close of this conference, a letter of accept-

ance signed by plaintiff together with a check for $5,000 was handed to defendant. There was also handed to defendant a contract drawn up by plaintiff with the changes made in accordance with the letters of April 24th and July 14th. This agreement, however, was taken away by plaintiff's representative but returned the next day, August 13, 1941, by a constable together with a letter signed by plaintiff's attorney which stated that this "letter together with inclosed signed agreement and earnest money delivered to you yesterday constitute the acceptance of the Milner Hotel Corporation." While the executed contract thus served virtually follows the original proposition and the changes as authorized, it appears from the copy in the record that one clause in regard to possession was omitted. This unquestionably was the result of an inadvertence as the entire discussion theretofore related to plaintiff gaining possession of the property almost contemporaneously with the signing of the final agreement. The very fact that defendant was seeking a lease for club rooms and for a liquor store in the hotel proves beyond any question that immediate possession was to be given in accordance with the original offer as modified. The final acceptance referred specifically to that offer. We do not believe there can be any question about when possession was to be given.

When plaintiff accepted the offer on August 12th, defendant made no objections except that he asked for a copy of the resolution of the board of directors authorizing the signature of the president. Plaintiff agreed to supply the resolution and took back the agreement for that purpose, returning it with such resolution the following day. Altercations arose, however, particularly in regard to the renting of space in which defendant could carry on the

liquor business. Defendant refused to close the transaction. On October 1, 1941, the secretary and bookkeeper for plaintiff wrote to defendant asking him to return the check, stating that "the check is still outstanding and we do not have the hotel," but if, by this, a revocation was attempted, defendant did not accept such offer as he failed to return the check, keeping it until November 1st, when it was returned together with a certified check for $11,500 which plaintiff had also sent him.

On November 10, 1941, the present suit was brought for specific performance of the agreement of April 8, 1941, with the modifications authorized by the two subsequent letters of defendant. Plaintiff also asked for an accounting of loss of profits for the time it was kept out of possession of the hotel and contents.

The facts are complicated and we have set forth only those that we deem essential to the issue. The trial judge awarded specific performance and decreed that plaintiff should further recover the sum of $3,600 or $400 a month as the amount of net profit that plaintiff would have received had it operated the hotel from September 15, 1941, to June 15, 1942, and also the further sum of $400 a month for each month thereafter until possession was given. The decree also provided for the leasing to defendant of a store in the hotel to be used for the sale of liquor and beer to be taken out and not to be consumed on the premises. No complaint is made in regard to the provisions of the decree in regard to a lease.

Defendant on appeal contends that his offer was not accepted within the time limited because plaintiff's draft of the final contract, delivered to defendant on August 13th, was substantially different from the original proposal. He contends that the

delivery of the letter of acceptance and the check for $5,000 did not constitute a binding acceptance. The changes in the contract as delivered did not materially alter the original agreement. The contract thus executed by plaintiff and delivered within the 30 days was in substantial compliance with the original offer as modified by defendant's letters. The original contract provided for plaintiff to pay a claim of the Home Savings Bank of Kalamazoo. The new agreement provided that plaintiff pay defendant the full sum of $16,500 instead of plaintiff paying the claim to the bank. This would operate to defendant's advantage as he could be certain that the bank was paid. The clause in the contract calling for the application of an unpaid tax fund to the principal is a harmless statement of a bookkeeping principle which benefits defendant and would be followed in any event. Exclusion of the provision requiring payment in 12 years was authorized by the letter. We commented upon the failure to include the date for possession by plaintiff. Possession could not be taken before the closing of the final agreement, payment of the down payment, and execution of the land contract.

The new agreement that was prepared by plaintiff is substantially in conformance with the initial agreement as modified by the letters, and which it is sought to enforce herein. Defendant at no time throughout the subsequent negotiations made any claim, written or oral, that the agreement shown him on August 12th in any manner failed to conform with the proposals originally presented. Notwithstanding the argument now advanced, on August 12, 1941, he retained the $5,000 check and insisted only upon a resolution by the board of directors showing that the president was authorized to execute the agreement on behalf of the corporation. Defendant, however, claims that there were other points of

difference that arose, but these did not depart from the basic agreement it is sought to enforce. They consisted solely of requested concessions to change the contract in some other respects. The contract itself as modified by the letters was accepted. The contract was definite. If the later negotiations were indefinite, they were made so by defendant's deliberate tactics either to terminate the agreement or to force additional modifications.

Defendant stresses the fact that plaintiff wanted to furnish him with insurance certificates instead of policies of insurance. In the specific performance decreed, insurance must be furnished in accordance with the provisions of the printed contract form referred to in the agreement. Defendant's counsel had indicated to plaintiff's counsel that if certificates of insurance were satisfactory to the mortgagee, they might possibly be satisfactory to his client. Although the approval of the mortgagee had been secured, defendant withheld his consent. That ended the matter. The decree provides for insurance in accordance with the original contract.

In the letters of modification defendant agreed to dispose of the liquor license and the liquor and food inventory but on August 12th he demanded a lease for six months of the club rooms and a lease for five years of the store rooms. Plaintiff's acceptance made no provision in regard to this lease. There is nothing in the original contract requiring plaintiff to lease any portion of the premises. Although defendant apparently agreed to forego long-term leases on August 12, 1941, he persisted in demanding them in subsequent negotiations and thereby deliberately postponed the time of the signing of the final contract. Even so, the court made provision for leases for a period and at a rental which defendant at one time had insisted on and which the parties evidently agreed upon on August 12, 1941.

Dispute over the special parking tax seems to have been settled by the broker agreeing to pay the last eight instalments thereof and defendant agreeing to pay the first two. By the contract, plaintiff was entitled to an unencumbered title. The decree follows the form of the land contract as to the real estate and provides for reasonable notice of default as to the personalty. It is clear that the parties entered into a binding agreement although they also discussed, but did not agree on, minor conditions dehors the agreement. Their respective obligations had the degree of certainty requisite for specific performance of the agreement of April 8, 1941, as modified by the letters. Frequently in drafting contracts of this nature, there may be minor omissions, but we held in *Brin* v. *Michalski,* 188 Mich. 400 (quoting from the syllabus), that:

"While provisions as to defeasance, insurance, repairs, and payments of taxes might properly have been included, they are not essential to the validity, or decree for specific performance, of a land contract, where said agreement is definite as to parties, property, consideration, terms and time of performance."

See, also, *Ogooshevitz* v. *Arnold,* 197 Mich. 203. Specific performance of a contract to deed land cannot be defeated because the contract includes personal property. *County of Ottawa* v. *Zwagerman,* 229 Mich. 501.

Defendant, however, claims that in the event of defendant's default plaintiff would be entitled to the return of the $5,000, and that since this constituted liquidated damages plaintiff is not entitled also to specific performance. A stipulation in regard to liquidated damages does not preclude a suit for specific performance unless it appears from the

whole contract that it was the intention of the parties that the right to pay the stipulated sum or perform the contract should be optional. *Hedrick v. Firke,* 169 Mich. 549. 2 Restatement, Contracts, p. 700, § 378. Also, see authorities assembled in 32 A. L. R. 584, 98 A. L. R. 887. It would be a misnomer to refer to the return of a deposit as the payment of damages.

Plaintiff is entitled to specific performance and also to an accounting for its loss of profits because of defendant's refusal to carry out the contract at the time agreed upon. By persistently refusing to perform his agreement, defendant was enabled to keep possession of the hotel and to make a large profit thereby. One of his witnesses stated that the hotel had a rental value of $360 a month; another of $450 a month. One of plaintiff's witnesses, on the other hand, estimated the profits of the hotel would amount to $800 a month. Another one placed the figure at $1,000 per month. The trial judge awarded plaintiff the sum of $400 per month. The decree, however, is indefinite as to when interest is to begin. The court properly ruled that plaintiff was entitled to damages of $400 a month from and after September 15, 1941. Plaintiff had previously made a tender of $16,500. It stood ready to pay this amount. Interest should run from September 15, 1941, not on the entire $78,000 but on $61,500, the balance that would have been due had defendant acceded to the contract.

The decree of the trial court is affirmed with modification as to interest. Proper decree may be entered in this court. Plaintiff will recover costs.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred.