DEVONAIR ENTERPRISES, LLC v DEPARTMENT OF TREASURY

Docket No. 303785. Submitted April 3, 2012, at Lansing. Decided May 8, 2012. Approved for publication June 19, 2012, at 9:05 a.m.

Devonair Enterprises, LLC, filed a petition in the Tax Tribunal challenging a determination by the Department of Treasury that it was not entitled to elect to pay use tax on receipts from the lease of an airplane in lieu of payment of use tax on the full cost of the airplane under MCL 205.95(4). The Tax Tribunal affirmed respondent's determination. Petitioner appealed.

The Court of Appeals held:

1. The Use Tax Act levies on every person in Michigan a specific tax for the privilege of using, storing, or consuming tangible personal property in Michigan at a rate of six percent of the price of the property or services. Under MCL 205.95(4), a lessor may elect to pay use tax on receipts from the rental or lease of the tangible personal property in lieu of payment of sales or use tax on the full cost of the property at the time it is acquired. Under an administrative rule, a person engaged in the business of renting or leasing tangible personal property to others must pay the use tax at the time he or she purchases the property, or the person may report and pay use tax on the rental receipts from the rental. The rule merely clarifies the interrelationship between the relevant statutory provisions and reiterates the statutory election set forth in MCL 205.95(4). Under the act, the burden of paying use tax is on the consumer or purchaser, rather than the seller. Under the option set forth in MCL 205.95(4), the person is merely collecting the use tax from the ultimate consumer or purchaser who is exercising the privilege of use, storage, or consumption. Thus, the requirement set forth in the administrative rule that the person be engaged in the business of renting or leasing tangible personal property to others is consistent with the requirements and objectives set forth in the act. Accordingly, the administrative rule does not impose additional requirements or limit or modify the application of MCL 205.95(4).

2. Under the Use Tax Act, a business is all activities engaged in by a person or caused to be engaged in by a person with the object of gain, benefit, or advantage, either direct or indirect. To have

been engaged in the business of selling tangible personal property for storage, use or other consumption under former MCL 205.95(1), so as to be considered a lessor under MCL 205.95(4), the person must have engaged in the business of selling with the object of gain, benefit, or advantage. The Tax Tribunal found that the only leases that petitioner entered into did not reflect arm's-length transactions and were not indicative of petitioner being engaged in the business of leasing the airplane to others. This finding was supported by the record. Petitioner asserted that it had established a gain, benefit, or advantage through the profitable management of the airplane as an appreciating asset, by providing Federal Aviation Administration compliance and liability control, by protecting the legal interests of other companies, and by allowing for easier transfer of the airplane. However, the gains, benefits or advantages cited by petitioner related more to the reasons petitioner was formed, than to any gain, benefit, or advantage it acquired from actually leasing the airplane. Because petitioner was not engaged in the business of renting or leasing the airplane to others, it was not entitled to make the election provided by MCL 205.95(4). Under the circumstances, the Tax Tribunal properly concluded that petitioner was not eligible to pay tax on its rental receipts in lieu of sales or use tax on the full purchase price of the airplane.

Affirmed.

*Suzanne Meiners-Levy* and *Barnes & Thornburg LLP* (by *Jeffrey G. Muth*) for Devonair Enterprises, LLC.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Kevin T. Smith*, Assistant Attorney General, for the Department of Treasury.

Before: FORT HOOD, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM. Petitioner appeals as of right from an order of the Michigan Tax Tribunal (MTT) affirming respondent's assessment of use tax. We affirm.

Petitioner was formed in September 2003 and registered for a use-tax permit, indicating it was in the

business of "equipment leasing." Petitioner's sole member is DJS Enterprise Group, LLC (DJS), which was also formed in September 2003. The sole members of DJS are Donald and Cynthia Smith. On July 31, 2007, petitioner purchased a 2007 Pilatus PC-12 airplane for $3,610,690 and, on the same day, entered into two lease agreements. One lease agreement was with DJS and provided that DJS was to lease the Pilatus for $200 a flight hour, as well as pay all operational costs including maintenance, repairs, insurance, fuel, and storage costs for the airplane. The second lease agreement was with Donald Smith who was to lease the Pilatus for $636 a flight hour, which was later adjusted to $680 a flight hour. Petitioner did not enter into any other lease agreements regarding the Pilatus, which was petitioner's only asset. Petitioner did not pay sales or use tax on the Pilatus at the time of purchase; instead, petitioner claimed that it was entitled to pay use tax on the rental receipts it received from leasing the aircraft pursuant to MCL 205.95(4).

In January 2008, respondent issued a bill for use taxes due based on the purchase price of the Pilatus, in the amount of $207,000, plus a penalty in the amount of $51,750. An informal conference followed before a neutral Hearings Division referee who ultimately recommended that the assessment be upheld. Respondent accepted that recommendation. After respondent issued its final bill for taxes due, petitioner filed its petition for review with the MTT. A hearing followed. Some of the stipulated facts included that (1) in 2007, the Pilatus had 74.4 flight hours, 67.9 from use by DJS and 6.5 from use by Donald, (2) in 2008, the Pilatus had 179 flight hours, 145.8 from use by DJS and 33.3 from use by Donald, and (3) in 2009, the Pilatus had 136.5 flight hours, 110.5 from use by DJS and 26 from use by Donald. Donald testified that he purchased the Pilatus

because it had the best resale value of any plane. He stated that he was planning for this aircraft to be an appreciating asset and that leasing it as a charter to unrelated parties would cause the plane to lose value. Donald also testified that DJS owns a hangar in Ionia, Michigan, where the Pilatus is kept and that he was the only person to pilot the aircraft.

An expert in the aviation industry, Louis Meiners, Jr., testified that, generally, a charter service would charge about $1,300 a flight hour for planes similar to the Pilatus. He further testified that a premium is not paid for a pristine charter aircraft and that the biggest indicator of depreciation is the number of hours that the plane is operated. Other evidence presented at the hearing related to the costs of owning a Pilatus. Presuming 479 flight hours a year, which is fairly typical usage, the fixed and variable costs of owning a Pilatus amount to about $1,580 a flight hour.

Following the hearing, a 59-page proposed opinion and judgment was issued affirming the tax assessed by respondent with credit to be given for remitted tax payments, but disallowing the penalty assessed. The MTT concluded that petitioner was not a "lessor," as set forth in MCL 205.95(4), because it was not "engaged in the business of renting or leasing" aircraft as set forth in Mich Admin Code, R 205.132 (Rule 82). The MTT considered three factors as indicators of whether an entity is engaged in the business of renting or leasing tangible personal property to others: (1) whether the rates and terms of the lease are consistent with leases resulting from an arm's-length transaction, (2) whether the taxpayer holds itself out to the public as a lessor, and (3) whether the amount of time that the property is leased is sufficient to produce revenue consistently with other leasing businesses.

In this case, the MTT concluded, the nominal
hourly rate petitioner charged Donald was insuffi-
cient to cover the cost of leasing the Pilatus and was
not indicative of a leasing business that enters into
leases with others, through arm's-length transac-
tions, with a reasonable expectation of gain, benefit,
or advantage resulting from the leasing agreement.
With regard to the lease agreement between peti-
tioner and DJS, the MTT noted that it required DJS
to bear the entire cost of maintenance, repairs, insur-
ance, storage, and fuel even though DJS was granted
nonexclusive use of the aircraft and the agreement
was terminable at will by petitioner. Thus, even if
others rented the aircraft, DJS remained responsible
for all such substantial costs and petitioner could
terminate the lease immediately after DJS incurred
the cost of major repairs. These circumstances, con-
cluded the MTT, were not indicative of a leasing
business that enters into leases with others through
arm's-length transactions because the terms were
exceedingly unfavorable to DJS. And DJS used the
aircraft for relatively few hours a year, about 324
flight hours over 27 months or 144 hours a year
compared to 290 to 479 hours, which is typical usage
of a Pilatus according to aviation publications; thus,
petitioner did not have as its object a gain, benefit, or
advantage from leasing the Pilatus to DJS.

The MTT also noted that petitioner did not adver-
tise to the public that it was a lessor of aircraft and
did not pursue additional leasing agreements with
unrelated companies because petitioner wanted to
preserve the resale value of the Pilatus for its own
purposes. These circumstances, again, indicated that
petitioner was not operating as a leasing business—
otherwise it would have had incentive to maximize
the rental rates and rental hours to recover, at least,

the fixed costs associated with the Pilatus. Further petitioner's annual use-tax returns showed a rate of return of less than one percent on this $3.6 million asset; thus, the leasing agreement terms and actual usage of the Pilatus did not yield revenue consistently with the expectations of a leasing business. The MTT noted that acceptance of petitioner's argument would allow a taxpayer to avoid paying sales or use tax on the purchase price of an aircraft by simply obtaining a use-tax registration, forming an LLC, and leasing the aircraft for a nominal rate and for minimal flight hours to its only member in an effort to acquire and hold the asset with very limited tax liability. As demonstrated here, petitioner's limited rental receipts resulted in petitioner paying minimal use tax compared to the tax that would have been paid at the time this $3.6 million aircraft was purchased.

In summary, the MTT concluded that, considering the two lease agreements as well as petitioner's activities as a whole, petitioner had failed to establish that it was a lessor engaged in the business of leasing the Pilatus to others for its own gain, benefit, or advantage. Rather, petitioner's leases were designed to benefit DJS and Donald. Simply stated, petitioner existed to hold the Pilatus for the personal use of petitioner's sole member, DJS, and the sole members of DJS, Donald and Cynthia Smith. Thus, petitioner was not entitled to elect to pay use tax on the rental payments it received from leasing the aircraft and was liable for use tax on the purchase price of the Pilatus. The MTT rejected petitioner's argument that the proper remedy was to impose use tax on market-value lease rates rather than the purchase price because petitioner failed to qualify for an election under MCL 205.95(4) or Rule 82. Accordingly, the MTT affirmed respondent's assessment of use tax on the purchase price of the Pilatus in the amount

of $207,000, but disallowed the penalty assessed. Subsequently, the proposed opinion and judgment were adopted as the final decision in this case. This appeal followed.

Petitioner argues that the MTT erred by concluding that it was not entitled to elect to pay use tax on receipts from the lease of its Pilatus as provided by MCL 205.95(4) after improperly applying Rule 82, which limited and modified the plain language of MCL 205.95(4) to lessors "engaged in the business of renting or leasing tangible personal property to others . . . ." We disagree.

"In the absence of fraud, review of a decision by the Tax Tribunal is limited to determining whether the tribunal erred in applying the law or adopted a wrong principle; its factual findings are conclusive if supported by competent, material, and substantial evidence on the whole record." *Mich Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 476; 518 NW2d 808 (1994). Further, we review de novo issues of statutory interpretation, but accord respectful consideration to the agency's interpretation. *Alvan Motor Freight, Inc v Dep't of Treasury*, 281 Mich App 35, 38; 761 NW2d 269 (2008).

MCL 205.93(1) of the Use Tax Act (UTA) provides:

> There is levied upon and there shall be collected from every person in this state a specific tax for the privilege of using, storing, or consuming tangible personal property in this state at a rate equal to 6% of the price of the property or services . . . .

Former MCL 205.95(1)[1] provided:

---

[1] MCL 205.95(1) was amended by 2007 PA 93, effective December 1, 2007. Because petitioner purchased the airplane before the effective date of the amendment, this opinion addresses the language in former MCL 205.95(1).

> Except as otherwise provided in this subsection or [MCL 205.95(5)], a person engaged in the business of selling tangible personal property for storage, use or other consumption in this state shall register with the department [of Treasury] . . . . Every seller shall source sales in accordance with [MCL 205.110] and collect the tax imposed by this act from the consumer.

MCL 205.95(4) provides:

> A lessor may elect to pay use tax on receipts from the rental or lease of the tangible personal property in lieu of payment of sales or use tax on the full cost of the property at the time it is acquired. For tax years that begin after December 31, 2001, in order to make a valid election under this subsection, a lessor of tangible personal property that is an aircraft shall obtain a use tax registration by the earlier of the date set for the first payment of use tax under the lease or rental agreement or 90 days after the lessor first brings the aircraft into this state.

And Rule 82 states:

> A person engaged in the business of renting or leasing tangible personal property to others shall pay the Michigan sales or use tax at the time he purchases [the property], or he may report and pay use tax on the rental receipts from the rental thereof. [Mich Admin Code, R 205.132.]

In this case, petitioner elected to pay use tax on receipts from the rental of its aircraft, as set forth in MCL 205.95(4), instead of paying sales or use tax on the purchase price when the aircraft was acquired, as set forth in MCL 205.93(1). The MTT held that petitioner could not make that election because it was not a "lessor." According to the MTT, petitioner was not a "lessor" under MCL 205.95(4) because it was not "engaged in the business of renting or leasing tangible personal property to others," as set forth in Rule 82. Petitioner argues that the MTT improperly applied Rule 82, imposing additional requirements by limiting

or modifying the application of MCL 205.95(4) to lessors "engaged in the business of renting or leasing tangible personal property to others," contrary to the plain language of MCL 205.95(4), which requires only that petitioner be a "lessor."

Rule 82, however, neither imposes additional requirements, nor limits or modifies the application of MCL 205.95(4). Former MCL 205.95(1) required that a "person engaged in the business of selling," i.e., a seller, "source sales . . . and collect the tax imposed by this act from the consumer." Under the UTA, a "seller" is defined as "the person from whom a purchase is made . . . ." MCL 205.92(d).[2] And a "purchase" is an acquisition effected by a transfer of possession for consideration, which includes "rental in money." MCL 205.92(e). Similarly, the "purchase price" is the consideration paid by the consumer to the seller for the property leased or rented. MCL 205.92(f).[3] Thus, a "lessor" is a "seller" under the UTA, if the lessor is engaged in the business of "selling," which includes leasing and renting tangible personal property. Accordingly, Rule 82 merely clarifies the interrelationship between MCL 205.93(1), former MCL 205.95(1), and MCL 205.95(4), as well as reiterates the statutory election set forth in MCL 205.95(4).

---

[2] "When a statute specifically defines a given term, that definition alone controls." *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007).

[3] Statutory provisions of the UTA and the General Sales Tax Act (GSTA), MCL 205.51 *et seq.*, are complementary and supplementary. *World Book, Inc v Dep't of Treasury*, 459 Mich 403, 406; 590 NW2d 293 (1999). Accordingly, the definitions set forth in the UTA are consistent with those set forth in the GSTA, which, for example, defines a "sale at retail" as "a sale, lease, or rental of tangible personal property," MCL 205.51(1)(b), and defines "sales price" as consideration "for which tangible personal property or services are sold, leased, or rented," MCL 205.51(1)(d).

Under the UTA, the burden of paying use tax is on the consumer or purchaser, rather than the seller because the purchaser is the party exercising the privilege of use, storage, or consumption. See *World Book, Inc v Dep't of Treasury*, 459 Mich 403, 415-416; 590 NW2d 293 (1999). Thus, pursuant to MCL 205.93(1), a person could pay use tax at the time he or she purchases tangible personal property, because at that time the person is a consumer or purchaser exercising the privilege of use, storage, or consumption. However, pursuant to former MCL 205.95(1), if a person was "engaged in the business of selling"—which under the definitions set forth in the UTA includes leasing and renting—and registered as such, the person could elect instead, under MCL 205.95(4), to pay use tax on receipts from the rental or lease of the tangible personal property. Under this option set forth in MCL 205.95(4), the person is merely collecting the use tax from the ultimate consumer or purchaser who is exercising the privilege of use, storage, or consumption. See *World Book, Inc*, 459 Mich at 415-416. Thus, the requirement set forth in Rule 82 that "[a] person [be] engaged in the business of renting or leasing tangible personal property to others" is consistent with the requirements and objectives set forth in these statutes—the collection of use tax from the ultimate consumer of the personal property. "Agencies have the authority to interpret the statutes they are bound to administer and enforce." *Clonlara, Inc v State Bd of Ed*, 442 Mich 230, 240; 501 NW2d 88 (1993). Rule 82 is an interpretative rule that neither conflicts with the governing statutes nor extends or modifies the statutes; thus the rule is valid. See *Guardian Indus Corp v Dep't of Treasury*, 243 Mich App 244, 254; 621 NW2d 450 (2000). Accordingly, petitioner's claim that Rule 82 is inapplicable and that its application by respondent improperly imposed additional require-

ments by limiting or modifying the plain language of MCL 205.95(4) are without merit.

Petitioner also argues that the MTT erroneously denied petitioner the right to elect to pay use tax on receipts from the rental or lease of the Pilatus because the requirements set forth in MCL 205.95(4) were met, including that it was a "lessor." We disagree.

The MTT held that petitioner was not "engaged in the business of selling," former MCL 205.95(1), or, as provided in Rule 82, petitioner was not "engaged in the business of renting or leasing tangible personal property to others," and thus could not elect the option provided under MCL 205.95(4) as a "lessor." MCL 205.92(h) defines "business" as "all activities engaged in by a person or caused to be engaged in by a person with the object of gain, benefit, or advantage, either direct or indirect." The MTT held that, contrary to its claim, petitioner was not a lessor because it was not engaged the business of leasing the Pilatus to others for petitioner's gain, benefit or advantage.

Petitioner argues that it established a gain, benefit, or advantage "through the profitable management of the appreciating asset," "by providing [Federal Aviation Administration] compliance and liability control," "by protecting the legal interests of other companies," and because the business "allowed for easier transfer of the property." In particular, petitioner argues, "there were clear business reasons both for the establishment of [petitioner] as a distinct legal entity as well as the leasing activity," including (1) to acquire an appreciating asset without incurring operating costs, (2) for liability protection so that a creditor of DJS could not attach the aircraft, (3) so that Donald could protect his privacy by registering the aircraft in petitioner's name, and (4) that holding the "aircraft in a separate legal

entity made disposition of the business operation easier in the event that [Donald] chose to sell the business."

However, petitioner's claims of "gain, benefit, or advantage" speak more to the reason petitioner was formed as a separate entity (particularly to benefit Donald) than to any gain, benefit, or advantage petitioner acquired from its alleged business of leasing aircraft. Petitioner obtained a use-tax registration, and thus did not pay tax on the purchase price of the Pilatus, by claiming that it was in the business of leasing equipment, i.e., aircraft. As a consequence, petitioner was required to report, collect from the consumer, and pay use tax on its rental receipts. Petitioner's claims of gain, benefit, or advantage are not endeavors that would generate rental receipts from which use tax would be paid. In fact, Smith testified that he acquired the Pilatus because he planned on it being an appreciating asset and that leasing the aircraft would cause it to lose value. But petitioner avoided paying tax on the aircraft when it was purchased by claiming that it was in the business of *leasing* aircraft, not because it was in the business of holding appreciating assets. The fact that petitioner owns an appreciating asset is irrelevant to its purported business of leasing aircraft. And petitioner's claims that DJS and Donald benefited from the leasing arrangements are of no consequence to the issue whether petitioner itself gained, benefited, or achieved an advantage from its alleged business of leasing aircraft.

To be "engaged in the business of selling tangible personal property for storage, use, or other consumption," former MCL 205.95(1), so as to be considered a "lessor" under MCL 205.95(4), petitioner must have engaged in the business of selling, i.e., selling activities with the object of gain, benefit, or advantage. And Rule 82 provides for

the payment of use tax on rental receipts generated from the "renting or leasing [of] tangible personal property to others . . . ." In this case, the only business or selling activities that petitioner engaged in was a lease agreement with its sole member DJS, and a lease agreement with DJS member Donald. The MTT concluded that these leases did not reflect arm's-length transactions and were not indicative of petitioner being engaged in the business of leasing the Pilatus to others. This finding was supported by the extremely favorable leasing terms with regard to the lease agreement with Donald, as well as by the unreasonable lease terms provided in the DJS agreement. Pursuant to the agreement with Donald, the aircraft was leased at an hourly rate significantly less than the hourly operational costs incurred by petitioner. Pursuant to the DJS agreement, DJS was responsible for all operational costs, including maintenance, storage, insurance, fuel, and repairs, although the lease was nonexclusive and terminable at will by petitioner. Thus, even if other entities leased the aircraft, DJS remained liable for all associated costs. And even if DJS had paid for significant repairs on the aircraft, petitioner could terminate the lease immediately after the repairs were completed.

The MTT's conclusion that petitioner was not in the business of leasing aircraft to others was also supported by the fact that petitioner did not seek out any other leasing opportunities, for example, by advertising its purported aircraft leasing business. As a consequence of petitioner's inactivity, the aircraft was flown a minimal number of hours compared to the typical expectation of between 290 and 479 hours a year, producing little revenue for petitioner. Although petitioner argues on appeal that it did not seek out other leasing opportunities in an effort to preserve the aircraft's resale value, such an objective is not consistent with its claim that it

was engaged in the business of leasing the aircraft to others. See former MCL 205.95(1).

We conclude that the MTT did not err in applying the law and that its factual findings were adequately supported by the evidence on the whole record. See *Mich Bell Tel Co*, 445 Mich at 476. That is, the MTT's conclusion that petitioner was not a "lessor," as set forth in MCL 205.95(4), because it was not "engaged in the business of renting or leasing [the Pilatus] to others," as set forth in Rule 82, is affirmed. Because petitioner was never engaged in that business enterprise, and thus was not entitled to make the election provided by MCL 205.95(4), we reject petitioner's argument that the MTT erred by holding that petitioner is liable for use tax on the full purchase price of the Pilatus.

Affirmed.

FORT HOOD, P.J., and CAVANAGH and K. F. KELLY, JJ., concurred.