# STATE OF MICHIGAN

# COURT OF APPEALS

FAMILY BIBLE CHURCH OF MUSKEGON,

     Petitioner-Appellee,

v

CITY OF NORTON SHORES,

     Respondent-Appellant.

UNPUBLISHED
July 6, 2017

No. 332942
Tax Tribunal
LC No. 15-004811-TT

Before: TALBOT, C.J., and BECKERING and M.J. KELLY, JJ.

PER CURIAM.

Respondent, City of Norton Shores, appeals by right from the April 25, 2016 final order and judgment of the Michigan Tax Tribunal granting petitioner, Family Bible Church of Muskegon ("FBCM"), a tax exemption pursuant to MCL 211.7s (parsonage owned by a religious society and used as a parsonage) for lakefront property located in Muskegon at 3289 Winnetaska Rd. We affirm.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

The Raymond Edward Erickson Trust (the "Trust") conveyed the subject property, along with two other properties,[1] to Jerry DePoy, his wife, Judy DePoy, and their son, Jerry DePoy, Jr. ("the DePoys") by way of three warranty deeds dated March 25, 2003. The Trust transferred each property "for the sum of one dollar and other valuable considerations." Jerry Depoy was both one of the recipients of the conveyance and a signatory trustee of the Trust that conveyed the property to him and his wife and son. A "Memorandum of Land Contract" filed with the Muskegon County Records Division on October 29, 2003, indicated that the DePoys had sold the properties via land contract to petitioner, which at that time was known legally as the Baptist Bible Temple (BBT).[2] Nevertheless, between October 28, 2003, and March 11, 2005, the three

---

[1] Two of the properties were improved. At some point, the three properties were reconfigured into two, eliminating the unimproved property.

[2] Petitioner began operating under the informally assumed name, "The Family Bible Church of Muskegon," (FBCM) in 2007, while retaining BBT as its legal name. In 2008, Jerry DePoy was ordained as a minister with the Christian and Missionary Alliance (CMA) and became senior

DePoys, as well as Jerry Jr.'s wife, Jamie, used the subject property, 3289 Winnetaska Rd., as security for four future advance mortgages given to Fifth-Third Bank. The mortgages were dated October 28, 2003, July 1, 2004, December 29, 2004, and March 11, 2005, for maximum amounts of $70,000, $108,559.50, $40,000, and $130,000 respectively, each of which was discharged.

On October 15, 2015, petitioner, under the name BBT, conveyed the properties back to Jerry and Judy DePoy for one dollar and terminated all its interest in the properties. Jerry DePoy, among others, signed the quitclaim deed on behalf of petitioner in his capacity as petitioner's president. Four days later, Jerry and Judy DePoy conveyed the subject property, 3289 Winnetaska Rd., by warranty deed to Shane and Teresa Snoap for $440,000. According to respondent, Jerry and Judy DePoy kept the proceeds from the sale.

*Proceedings before the tax tribunal*

In March 2015, the Board of Review denied a parsonage exemption to the subject property and estimated its taxable value as $266,900. Respondent's concern at the time was that the ownership interest of the church (The Great Lakes Division of the CMA) was not the same as the ownership interest of the parsonage (petitioner, as the BBT). Petitioner filed an appeal in the Tax Tribunal's small claims division, arguing that the property had been exempt from taxes as a parsonage since 2004, and that nothing had changed except that the church had been operating under an assumed name, which it had recently formalized by a change in the articles of incorporation.

The tribunal eventually scheduled an in-person hearing on petitioner's appeal for February 8, 2016. Before the date of the scheduled hearing, respondent sought to move the matter from the civil claims division to the entire tribunal, arguing that discovery was necessary to resolve apparent discrepancies in the chain of title of the subject property that did not coincide with the legal entity that owns and operates the church.[3] The tribunal denied respondent's motion, observing that the matter was properly pending in the small claims division, petitioner had not granted permission for its transfer,[4] and the parties had had sufficient notice and time to prepare their cases.

---

pastor at The Family Bible Church (FBC), a CMA-owned church building located at 1256 W. Broadway Ave, Roosevelt Park. On April 24, 2015, petitioner amended its articles of incorporation to change its name formally from BBT to FBCM. These changes appear to have some relation to petitioner's efforts to affiliate with the CMA.

[3] Discovery in the small claims division is by leave of the tribunal only. TTR 261; Mich Admin Code, R 792.10261.

[4] "With the permission of the petitioner, the tribunal may refer a contested case properly pending in the small claims division to the entire tribunal." TTR 273; Mich Admin Code, R 792.10273(4). The tribunal interpreted this rule to require petitioner's permission before transferring *any* matter properly pending in the small claims division, even where another party had requested transfer.

The hearing referee found petitioner to be "a religious society which regularly conducts services and has a congregation of approximately 35 members," and he found Jerry DePoy to be its senior pastor. The referee also found that petitioner had owned the subject property as a purchaser under a land contract until October 15, 2015, and that the subject property was a parsonage that housed petitioner's senior pastor and his wife. Based on these facts, the referee concluded as a matter of law that petitioner was entitled to an exemption pursuant to MCL 211.7s.

Respondent filed exceptions to the referee's proposed order and judgment [POJ], stressing what respondent considered logical inconsistencies regarding the property, gaps in the evidence upon which the referee based its findings of fact, and an erroneous denial of respondent's request for discovery. Respondent compared the instant case to *Michigan Ass'n of Regular Baptist Churches v City of Grand Rapids*, MTT Docket No. 173715, issued August 8, 1995 (*MARBC*), where the tribunal concluded that a religious society was not entitled to a parsonage exception because the minister retained beneficial use of property transferred by quitclaim deed to the religious society.

After considering respondent's exceptions, petitioner's response, and the case file, the tribunal concluded that the hearing referee "properly considered the testimony and evidence submitted in the rendering of the [POJ]." Regarding respondent's procedural complaints, the tribunal observed that respondent had notice of the case on September 1, 2015, filed its answer on September 10, 2015, and any time thereafter could have filed a motion to conduct discovery and, if respondent needed additional time, a motion to adjourn. Respondent filed no such motions, and the tribunal opined that its issuance of the November 16, 2015 notice of hearing that set the hearing date for February 8, 2016, "provided the parties with ample notice and opportunity to prepare for hearing and file any motions necessary." The tribunal found that "[r]espondent's failure to present additional evidence [was] not good cause to justify modifying the POJ."

With regard to respondent's substantive exceptions, the tribunal determined that the existence of a land contract distinguished the instant case from *MARBC*, that petitioner's evidence sufficiently established petitioner as owner of the residence at issue, and that how petitioner paid or did not pay on the land contract was irrelevant to the issue at hand. The tribunal found "that the evidence and testimony on record credibly support the Hearing Referee's determination that the subject was a parsonage owned by a religious society and occupied as a parsonage by that religious society[,]" and that the hearing referee had properly determined that the subject property is entitled to the parsonage exemption under MCL 211.7s. In the final order and judgment from which respondent now appeals, the tribunal incorporated by reference the hearing referee's findings of fact and conclusions of law and affirmed that the subject property was exempt from taxation for 2015 under MCL 211.7s.

## II. ANALYSIS

## A. PARSONAGE EXEMPTION

Respondent first contends that competent, material, and substantial evidence does not support the tribunal's factual findings, and that the tribunal erred in applying the facts to the law.

We disagree. "In the absence of fraud, review of a decision by the Tax Tribunal is limited to determining whether the tribunal erred in applying the law or adopted a wrong principle; its factual findings are conclusive if supported by competent, material, and substantial evidence on the whole record." *Michigan Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 476; 518 NW2d 808 (1994), citing Const 1963, art 6, § 28. "Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence required in most civil cases." *Dow Chem Co v Dep't of Treasury*, 185 Mich App 458, 463; 462 NW2d 765 (1990). To the extent that resolution of the issue involves a question of statutory interpretation, review is de novo, with the agency's interpretation given "respectful consideration." *Devonair Enterprises, LLC v Dep't of Treasury*, 297 Mich App 90, 96; 823 NW2d 328 (2012).

> MCL 211.7s provides:
> Houses of public worship, with the land on which they stand, the furniture therein and all rights in the pews, and *any parsonage owned by a religious society of this state and occupied as a parsonage* are exempt from taxation under this act. Houses of public worship includes buildings or other facilities owned by a religious society and used predominantly for religious services or for teaching the religious truths and beliefs of the society. [Emphasis added.]

According to the plain language of the statute, to qualify for a parsonage exemption, petitioner must prove that the property is: 1) a parsonage, 2) owned by a religious society, and 3) occupied as a parsonage. See *Rose Hill Ctr, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997) (citation omitted) ("If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written."). Petitioner must prove that it is entitled to the exemption by a preponderance of the evidence. See *ProMed Healthcare v City of Kalamazoo*, 249 Mich App 490, 495; 644 NW2d 47 (2002) (stating, "the preponderance of the evidence standard applies to a petitioner's attempts to establish membership in an already exempt class"). Statutes that exempt taxation are narrowly construed in favor of the taxing authority. *Moshier v Whitewater Twp*, 277 Mich App 403, 409; 745 NW2d 523 (2007).

The sole dispute with regard to this issue is whether the subject property was "owned by a religious society." The gravamen of respondent's argument on appeal is that the land contract between DePoy and petitioner is a sham transaction that nominally gave petitioner possession of the subject property but allowed the DePoys to exercise control and dominion over the property while avoiding having to pay property taxes. Respondent's argument is enticing. Various conveyances of the subject property were not arms-length transactions and there is no documentary evidence of the payments made by petitioner to the DePoys under the land contract or of the compensation package of which those payments were an alleged part.[5] Moreover, although the hearing referee correctly noted that vendors in a land contract may mortgage their

---

[5] The hearing referee found credible the testimony from petitioner's secretary-treasurer, Shirley Kinnucan, that the FBCM provided DePoy a compensation package into which were factored the land contract payments.

interest in the land contract, neither the referee nor the tribunal went beyond this general statement of law to address specifically whether that was what the DePoys were doing here with the future advance mortgages.

As appealing as respondent's argument may be, it nevertheless fails because respondent did not provide the hearing referee or the tribunal with the evidence necessary to support its suspicions and to allow the tribunal to reach the conclusion that respondent urged.[6] Respondent submitted to the tribunal a copy of the Michigan State Tax Commission's official order regarding the subject property and an addendum showing the taxable value calculations, e-mail correspondence between the CMA and respondent, various documents showing the transfer history of the property, the future advance mortgages, and documents related to the CMA's property in Roosevelt Park. Of these, only the e-mail correspondence and the future advance mortgages have the potential to show that the land contract was a sham. The e-mail correspondence does not help respondent's case. In the e-mail exchange, a CMA official expressed his understanding that the properties were "under contract" to petitioner, and that Jerry DePoy and his family occupied one of them, which statement the tribunal found to support the hearing referee's finding that petitioner owned the property pursuant to a land contract. Thus, the thread with which respondent hangs its hope for reversal is that the only reasonable inference one can draw from the future advance mortgages is that the DePoys retained dominion and control over the property to do with it as they pleased, despite the existence of the land contract. However, this is not the only reasonable inference that one may draw.

Since 1998, mortgages of interests arising from land contracts have been governed by the land contract mortgage act, MCL 565.356 *et seq*.[7] Under this act, both the vendor and vendee may mortgage their respective interests in a land contract; the vendor's right includes the right to payments and the vendee's right includes the right to conveyance. MCL 565.357. MCL 565.357(1) provides, "[a] vendor or a vendee under a land contract may grant a land contract mortgage to secure any debt or obligation that may be secured by a real estate mortgage." "A land contract mortgage is not a real estate mortgage." MCL 565.356(g). A real estate mortgage is "a mortgage granted upon an interest in real property, other than a mortgage upon a vendor's or vendee's interest in a land contract unless the vendor and vendee join in or subject their respective interests to a single mortgage." *Id*.

Assuming that the future advance mortgages at issue here are real estate mortgages because they were granted upon an interest in real property, MCL 565.356(g) allows the DePoys and petitioner to join their respective interests in a single mortgage. Arguably, this means that respondent's interpretation of the future advance mortgages—as evidence that the DePoys retained dominion and control over the property—is not necessarily the only plausible interpretation. Although respondent might argue that if petitioner agreed to join the DePoys and submit its interest in the property to a single mortgage, it was because Jerry DePoy controlled

---

[6] Respondent's failure to substantiate its assertions with evidentiary support is what distinguishes this case from *MARBC*.

[7] 1998 PA 106, effective June 3, 1998; amended by 2002 PA 147, effective April 2, 2002.

petitioner as its senior pastor, respondent has presented no evidence that would allow the tribunal to reach this conclusion. Respondent's concerns may be valid, but respondent simply failed to present evidence showing that the land contract was anything other than what petitioner claimed it to be.

Respondent also contends that the land contract is invalid because it lacks the elements material to such a contract. This argument is without merit. A land contract is valid where it " 'is definite as to parties, property, consideration, terms and time of performance.' " *Rathbun v Herche*, 323 Mich 160, 165; 35 NW2d 230 (1948), quoting *Milner Hotels v Ehrman*, 307 Mich 347, 356; 11 NW2d 914 (1943). See also *Zurcher v Herveat*, 238 Mich App 267, 284-291; 605 NW2d 329 (1999) (indicating that material elements in a land contract are identification of the property, parties, and consideration, and, where payments are deferred, the amount and time of installment payments, and the rate of interest). In addition, to be valid, a land contract must meet Michigan's statute of frauds; specifically, it must be in writing and signed by the vendor. MCL 566.108.

The land contract at issue contained the above-listed material terms. The two pages[8] of the land contract submitted by petitioner lists the sellers as Jerry DePoy, Judy DePoy, and Jerry DePoy, Jr., and the buyer as petitioner under the name BBT. It provides a legal description of the property, gives the purchase price as $200,000, plus 6% interest per annum on the unpaid balance, payable in installments of $1,202.10 due on the first of each month. It also provides for late charges on payments not made within 14 days of the due date, and for a balloon payment at the end of 30 years. The contract is in writing and signed by the vendors. Thus, the two pages of the contract submitted by petitioner prove that the contract contains the elements necessary for a valid land contract.

Finally, respondent argues that the tribunal erred by failing to strictly construe the parsonage tax exemption in favor of the taxing unity. This argument is misplaced. It is true that tax-exemption statutes are "strictly construed in favor of the taxing unit." *DaimlerChrysler Corp v Michigan Dept of Treasury*, 268 Mich App 528, 534; 708 NW2d 461 (2005)(quotation marks and citation omitted). However, respondent does not point to any word or phrase in the statute at issue that requires interpretation. Where statutory language is clear and unambiguous, the tribunal must apply the statute as written. See *Rose Hill Ctr, Inc*, 224 Mich App at 32. Respondent also contends that the tribunal improperly considered the evidence regarding ownership in a light most favorable to petitioner, rather than the taxing entity. Even if the tribunal had been obligated to consider the evidence in the light most favorable to respondent, a proposition for which respondent cites no authority, we cannot say that, given petitioner's evidence of the land contract and respondent's lack of evidence showing that the conveyance was not what it purported to be, the outcome would have been different.

---

[8] Petitioner submitted the first and last page of the contract. Petitioner did not submit—nor did respondent request or otherwise obtain—the intervening pages of the land contract that set forth the rights of the tenants in possession and any terms and conditions of the contract other than those involving payment.

We conclude that the tribunal's factual findings—i.e., that petitioner is a religious society, that it is an owner of the subject property pursuant to a land contract, and that the property was used as a parsonage in 2015—are supported by competent, material, and substantial evidence. *Mich Bell Tel Co*, 445 Mich at 476. Further, the tribunal did not err in applying these facts to the law and concluding that petitioner is entitled to a tax exemption of the subject property pursuant to MCL 211.7s. Given this Court's limited standard of review of tribunal decisions, and in light of respondent's failure to submit evidence necessary to successfully challenge petitioner's claims and prove the existence of a sham transaction, the Court should affirm the tribunal's final order and judgment.

## B. MOTION TO REMOVE

Respondent next contends that the tribunal abused its discretion by denying its motion to transfer this matter to the entire tribunal and by not ordering discovery. We again disagree. This Court reviews the tribunal's discretionary decisions for an abuse of that discretion. See *Phillips v Deihm*, 213 Mich App 389, 394; 541 NW2d 566 (1995). An abuse of discretion occurs when a decision falls outside the range of principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

MCL 205.764 authorizes the tax tribunal to transfer a matter from the small claims division to the entire tribunal with the petitioner's permission or at the request of a party or intervenor. MCL 205.764 provides as follows:

(1) With the permission of the petitioner-appellant, the division or the chairperson may refer a proceeding to the tribunal for its decision.

(2) A party or an intervening party may request a transfer of a matter to the tribunal for hearing and decision. If the request is granted the party requesting the transfer shall pay:

(a) The fees and costs related to the transfer.

(b) The reasonable expenses incurred by the other parties incidental to the transfer from the division.

(c) Costs resulting from subsequent appeals if the other party prevails.

The statute's administrative analog is Mich Admin Code, R 792.10273 (TTR 273), which provides:

(1) A party may, by motion and notice to the opposing party or parties, request a transfer of the contested case from the small claims division to the entire tribunal.

(2) If the motion is filed with the tribunal after the notice of hearing in the contested case has been issued by the tribunal, the parties shall appear at the hearing and be prepared to conduct the hearing, unless otherwise provided by the tribunal.

(3) If the request is granted, the moving party shall pay all entire [sic] tribunal filing fees and any reasonable costs incurred by the opposing party or parties as a result of the transfer, unless otherwise provided by the tribunal.

(4) With the permission of the petitioner, the tribunal may refer a contested case properly pending in the small claims division to the entire tribunal.

The instant case was a contested case properly pending in the small claims division.[9] In denying respondent's request for a transfer, the tribunal interpreted TTR 273.4 as a limit on the exercise of its discretion, preventing it from granting respondent's request to transfer the matter unless petitioner had expressly agreed to such transfer.[10] The tribunal also made clear that it would have denied respondent's request even apart from the restrictions presumably imposed by TTR 273.4 because respondent had had plenty of time to ask for and obtain discovery or to file a motion to adjourn in order to pursue discovery, but had failed to do either.

Respondent implies that the tribunal should have permitted discovery despite denying its motion to transfer, as it was clear that the basis of respondent's request was its need for formal discovery. However, as the tribunal pointed out, respondent did not need to request a transfer to the full tribunal to obtain discovery. Discovery is available in the small claims division by leave of the tribunal. TTR 261; Mich Admin Code, R 792.10261. Respondent could have filed a motion to conduct discovery, but did not, and now contends that the tribunal should have parsed its motion to transfer, denying the transfer but granting its implied request for discovery, or treated the motion to transfer as a motion to conduct discovery, since the need for discovery was the basis for the motion. In either case, respondent provides no authority in support of its implied argument that the tribunal should have granted respondent sua sponte the relief that respondent could have expressly requested, but did not.

Affirmed

/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael J. Kelly

---

[9] "The residential property and small claims division . . . has jurisdiction over a proceeding, otherwise cognizable by the tribunal, in which residential property is exclusively involved." MCL 205.762(1).

[10] Because respondent does not challenge the tribunal's interpretation of TTR 273.4 on appeal, we do not address the merits of the tribunal's interpretation of this rule.