DAIMLERCHRYSLER CORPORATION v
DEPARTMENT OF TREASURY

Docket No. 262518. Submitted October 12, 2005, at Lansing. Decided
November 1, 2005, at 9:05 a.m. Leave to appeal sought.

DaimlerChrysler Corporation filed a petition for review in the Tax
Tribunal after the Department of Treasury denied its claim for a
refund of motor fuel taxes paid on unused fuel left in the fuel tanks
of new vehicles the petitioner sold to out-of-state dealers. The
respondent moved for summary disposition. The tribunal adopted
the proposed order of the hearing referee as its final decision and
granted summary disposition for the respondent. The petitioner
appealed.

The Court of Appeals *held*:

1. The petitioner is not entitled to a refund. The tribunal did
not err by concluding that the petitioner was not an "end user" of
the motor fuel as that term is used in MCL 207.1033 and 207.1039.
To qualify for a refund under either section, the petitioner must
have been an end user of the fuel at issue. For the purposes of
those provisions, the end user of motor fuel is the ultimate user of
the motor fuel, that is, the party who uses the fuel to power the
vehicle into which it is placed. Because the petitioner never used
the fuel at issue to power the vehicles, but passed the fuel on to
dealers who may have used the fuel or in turn passed it on to
purchasers, there is no genuine issue of fact regarding whether the
petitioner was an end user.

2. While MCL 207.1047 sets forth separate grounds for a
refund, that section does not permit a refund of motor fuel tax paid
on fuel used for any nonhighway purpose, but allows a refund only
in the circumstances listed in MCL 205.30: (1) overpayment, (2)
erroneous assessment, (3) unjust assessment, (4) excessiveness in
amount, or (5) wrongful collection.

3. The tribunal did not err by dismissing the petitioner's due
process claim. A state must provide a taxpayer with a meaningful
opportunity to withhold contested tax assessments and to chal-
lenge their validity in a predeprivation hearing or accord the
taxpayer meaningful backward-looking relief to rectify any uncon-
stitutional deprivation. The Motor Fuel Tax Act does provide a

meaningful postdeprivation remedy. Refunds are available under specified circumstances, and the act provides a procedure by which parties may obtain those refunds. The fact that the petitioner does not qualify for a refund under any provision of the act does not amount to a due process violation.

Affirmed.

1. TAXATION — MOTOR FUEL TAX — REFUNDS — END USERS.

The end user of motor fuel, for purposes of the provisions of the Motor Fuel Tax Act entitling an end user to a refund of motor fuel tax paid, is the ultimate user of the motor fuel, that is, the party that uses the fuel to power the motor vehicle into which it is placed; a person that passes the fuel on to another person that uses the fuel in this manner is not an end user (MCL 207.1033, 207.1039).

2. CONSTITUTIONAL LAW — DUE PROCESS — TAXATION — MOTOR FUEL TAX REFUNDS.

The provisions of the Motor Fuel Tax Act allowing refunds under specified circumstances, and setting forth a procedure by which a taxpayer contesting an assessment under that act may obtain a refund, provide a meaningful postdeprivation remedy that does not violate due process requirements (MCL 207.1033 to 207.1048).

*Halloran & Associates, PLC* (by *Michele L. Halloran* and *Joshua M. Wease*), for the petitioner.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Roland Hwang*, Assistant Attorney General, for the respondent.

Before: KELLY, P.J., and METER and DAVIS, JJ.

PER CURIAM. Petitioner DaimlerChrysler Corporation appeals as of right the Tax Tribunal's order granting, in respondent Department of Treasury's favor, summary disposition of petitioner's claim for a refund of state motor fuel tax petitioner paid pursuant to the Motor Fuel Tax Act (MFTA), MCL 207.1001 *et seq.*, on fuel

that petitioner purchased and placed in the fuel tanks of newly made vehicles sold to out-of-state dealers. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In the fuel tank of each vehicle manufactured by petitioner and relevant to this appeal, petitioner placed a certain amount of fuel. Petitioner purchased this fuel at retail and paid motor fuel tax on it. Petitioner then placed the vehicles with a common carrier, which shipped them out of state with any unused fuel left in the tanks. Petitioner's sales and service agreements for these vehicles transferred title, risk of loss, and control to the purchaser upon delivery to the common carrier.

In June 2001, petitioner filed a claim with respondent seeking a refund of $319,709 in motor fuel taxes paid from April 1, 2001, to June 30, 2001, on the unused fuel left in the fuel tanks of new vehicles that were sold to out-of-state dealers. Petitioner claimed that the fuel placed in the vehicles was incidental to the commercial enterprise of auto manufacturing and was not consumed by petitioner on Michigan public roads or highways. Petitioner specifically stated that the refund was sought under § 47 of the MFTA, MCL 207.1047, which permits a refund pursuant to MCL 205.30 of the general revenue act, MCL 205.1 *et seq*. Respondent, erroneously asserting that § 47 of the MFTA refers to § 30 of the MFTA rather than § 30 of the general revenue act, denied petitioner's claim, stating, "You are not licensed to export gasoline."

In December 2002, petitioner filed a petition for review in the Tax Tribunal contending that, during the assembly process, fuel was placed in each vehicle's fuel tank according to engineering specifications. Petitioner claimed that it was not an exporter of motor fuel; rather

the "[f]uel that remains in the fuel supply tanks of newly manufactured vehicles which are shipped out of state is a matter incidental to the commercial enterprise of auto manufacturing." Petitioner asserted that the stated intent of the MFTA is to require persons using state roads or highways to pay for that privilege and the MFTA allows those who pay tax on fuel used for nontaxable purposes to seek a refund. Petitioner asserted that, because the fuel petitioner purchased and placed in the fuel tanks of vehicles shipped out of Michigan was not used to operate those vehicles on state roads or highways, petitioner was entitled to a refund under § 47 of the MFTA. Subsequently, the Tax Tribunal granted petitioner's motion for leave to amend its petition by adding the allegation that petitioner was entitled to a refund pursuant to § 39 of the MFTA, MCL 207.1039, which permits an "end user" to seek a refund for tax paid on "motor fuel used in an implement of husbandry or otherwise used for a nonhighway purpose . . . ."

Respondent filed a motion for summary disposition, pursuant to MCR 2.116(C)(10), asserting first that petitioner is an exporter of motor fuel because it obtains large amounts of motor fuel for out-of-state distribution. Respondent further asserted that the "MFTA requires the Petitioner, in order to obtain a motor fuel tax refund, to be licensed as an exporter, to provide the Department with adequate proof of export, and to request a refund under Section 43, MCL 207.1043." Respondent also asserted that § 47 does not apply to petitioner because § 43 of the MFTA is the appropriate means for petitioner to obtain a refund. But even if § 47 did apply, respondent asserted that petitioner has not demonstrated that it is entitled to a refund under that section.

In a proposed order, the hearing referee opined that, under the current MFTA, only an end user may seek a refund for nonhighway purposes under § 33 (MCL 207.1033) and § 39. However, he noted that petitioner "does not claim a refund under these sections." Nonetheless, he further opined that petitioner is not an end user because it is not akin to a consumer who purchases a product at retail, e.g., a motorist who pumps gasoline into his or her vehicle's fuel tank. The proposed order also stated that, pursuant to the sales and service agreements, the motor fuel in the tanks was exported by the purchaser, not by petitioner. Therefore, the hearing referee concluded that petitioner was not an exporter of the fuel in question. He also stated that petitioner was not entitled to a refund pursuant to § 47, which allows a person to seek a refund pursuant to MCL 205.30. He opined that MCL 205.30 does not "contain substantive exemptions or create a right to a refund of tax properly paid." Rather, MCL 205.30 permits a refund in the event of, for example, overpayment. The hearing referee determined that because the taxes were properly imposed and paid, § 47 did not entitle petitioner to a refund.

Petitioner filed an exception and written argument in opposition to the proposed order. Petitioner first argued that the proposed order failed to consider petitioner's amended pleading, despite the Tax Tribunal having granted its motion for leave to amend. In the amended pleading, petitioner asserted it was due a refund pursuant to § 39.[1] Petitioner also asserted that it set forth arguments regarding §§ 33 and 39 in its trial brief. Petitioner argued that it was an end user of the motor fuel because it purchased the fuel at retail. Petitioner

---

[1] Despite the Tax Tribunal having granted petitioner's motion for leave to amend, petitioner had not yet filed its amended petition.

asserted that the fuel was not purchased for resale, but for use by petitioner to manufacture motor vehicles and was a component part of those vehicles. Petitioner also asserted that the hearing referee failed to consider the terms "bulk end user" defined by MCL 207.1002(f) and "industrial end user" defined by MCL 207.1003(o).[2] Petitioner, which did not cite any record evidence demonstrating that it fit within these definitions, asserted merely that it is "quite clear to Petitioner" that it qualifies as an end user under these definitions. Petitioner also asserted that the refund available under § 47 and MCL 205.30 is not limited to "overpayment" as the hearing referee opined.

The Tax Tribunal issued a final decision in respondent's favor. The Tax Tribunal first noted that there was no genuine issue of material fact "that Petitioner was not the 'exporter' of the motor fuel in question . . . ." It then focused on whether petitioner was entitled to a refund under §§ 33 and 39. It determined that petitioner was not an end user of the motor fuel and, therefore, not entitled to a refund under these sections. It determined that "the refund is targeted at the end user who ultimately uses the fuel in a vehicle for a nonhighway purpose. A person who acquires motor fuel and then transfers the fuel to another person who uses the fuel is not the 'end user' for purposes of these sections." The Tax Tribunal, while conceding that petitioner's placing of the fuel in the vehicles' fuel tanks could be considered use, determined that it was not *end use*. Accordingly, the Tax Tribunal adopted the proposed order and granted respondent's motion for summary disposition. Petitioner appeals this decision.

---

[2] MCL 207.1003(o) was deleted by 2002 PA 668, effective April 1, 2003.

## II. ANALYSIS

### A. STANDARD OF REVIEW

"Absent an allegation of fraud, our review of a Tax Tribunal's decision is limited to determining whether the tribunal committed an error of law or applied the wrong legal principle. While statutory interpretation is a question of law that is reviewed de novo, we generally defer to the Tax Tribunal's interpretations of the statutes it administers and enforces." *Schultz v Denton Twp,* 252 Mich App 528, 529; 652 NW2d 692 (2002) (citation omitted). "Although tax laws are construed against the government, tax-exemption statutes are strictly construed in favor of the taxing unit." *Inter Coop Council v Dep't of Treasury,* 257 Mich App 219, 222; 668 NW2d 181 (2003).

Summary disposition under MCR 2.116(C)(10) is appropriate if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. *Quinto v Cross & Peters Co,* 451 Mich 358, 362; 547 NW2d 314 (1996). "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id.* at 363.

### B. REFUND

Petitioner asserts on appeal that the Tax Tribunal erred in determining that petitioner is not eligible for a refund of motor fuel taxes paid under the MFTA. We disagree.

Petitioner contends that it is eligible for a refund of taxes paid pursuant to the MFTA. MCL 207.1008(1) provides that "tax is imposed on motor fuel imported into or sold, delivered, or used in this state" at the rates

of 19 cents a gallon on gasoline and 15 cents a gallon on diesel fuel.[3] According to § 32 of the MFTA, MCL 207.1032:

> If a person pays the tax imposed by this act and uses the motor fuel for a nontaxable purpose as described in sections 33 to 47, the person may seek a refund of the tax. To obtain a refund the person shall comply with the requirements set forth in section 48.

Petitioner contends on appeal that the Tax Tribunal erred in determining that it was not entitled to a refund under §§ 33 and 39 of the MFTA. According to § 33, "[a]n end user may seek a refund for tax paid under this act on motor fuel used by the person for nonhighway purposes." According to § 39, "[a]n end user may seek a refund for tax paid under this act on motor fuel used in an implement of husbandry or otherwise used for a nonhighway purpose not otherwise expressly exempted under this act." Thus, to qualify for a refund under either section, petitioner must first have been an end user of the fuel at issue.

Petitioner contends that the Tax Tribunal erred in concluding that it was not an end user as that term is used in §§ 33 and 39. In resolving whether the Tax Tribunal so erred, we must determine the meaning of the term "end user" in §§ 33 and 39.

---

[3] Further, MCL 207.1026(1) provides:

> Except as otherwise provided in section 32, there is an irrebuttable presumption that all motor fuel delivered in this state into the fuel supply tank of a motor vehicle licensed or required to be licensed for use on the public roads or highways of this state is to be used or consumed on the public roads or highways in this state for producing or generating power for propelling the motor vehicle. This presumption does not apply to that portion of the motor fuel used or consumed by a commercial motor vehicle outside of this state.

> When interpreting statutory language, our obligation is
> to ascertain the legislative intent that may be reasonably
> inferred from the words expressed in the statute. When the
> Legislature has unambiguously conveyed its intent in a
> statute, the statute speaks for itself, and judicial construc-
> tion is not permitted. Because the proper role of the
> judiciary is to interpret and not write the law, courts simply
> lack authority to venture beyond the unambiguous text of
> a statute. [*Koontz v Ameritech Services, Inc,* 466 Mich 304,
> 312; 645 NW2d 34 (2002) (citations omitted).]

When a term is not defined in a statute, we must give
the term its plain and ordinary meaning and may
consult a dictionary definition. *Id.*

The term "end user" is not defined in the MFTA, but
is defined by a dictionary as "the ultimate user for
whom a machine, [such] as a computer, or product,
[such] as a computer program, is designed." *The Ran-
dom House Dictionary of the English Language: Second
Edition Unabridged.* Shedding additional light on the
meaning of "end user," is MCL 207.1026, which equates
"used or consumed" with "producing or generating
power for propelling the motor vehicle." Accordingly, we
hold that, for the purposes of §§ 33 and 39 of the MFTA,
an end user of motor fuel is the ultimate user of the
motor fuel, i.e., the party who uses the fuel to power the
motor vehicle into which the fuel was placed.

Under the circumstances presented in this case,
petitioner purchased the fuel at retail, and then placed
the fuel into the fuel tanks of new vehicles. Those
vehicles were then transferred to dealerships when they
were placed in the possession of the common carrier in
this state. Petitioner never used the fuel at issue to
power the vehicles.[4] Rather, petitioner passed the fuel

---

[4] We do not determine whether, to the extent that petitioner did use
fuel to power vehicles within its facilities, a refund under § 33 or § 39 may
be appropriate. This appeal is focused specifically on petitioner's claim

on to the dealership, which may have used the fuel to power the vehicle or may have passed the fuel on to a purchaser who used the fuel to power the vehicle. We conclude that, because the evidence demonstrates that petitioner did not use the fuel to power the vehicles, but passed the fuel on to someone else who so used it, there is no genuine issue of fact regarding whether petitioner was an end user of the fuel. Because petitioner was not an end user of the fuel at issue, it does not qualify, under either § 33 or § 39 of the MFTA, for a refund of motor fuel taxes paid.[5]

Petitioner also asserts that § 47 provides another, "more generic" basis for a refund of motor fuel tax paid. MCL 207.1047 provides:

---

for fuel that it did *not* use and that it left in the fuel tanks of vehicles that were ultimately shipped out of state.

[5] Petitioner asserts that, because it was a "bulk end user" as defined in MCL 207.1002(f), it was an "end user" as that term is used in §§ 33 and 39. MCL 207.1002(f) defines a "bulk end user" as "a person who receives into the person's own storage facilities by transport truck or tank wagon motor fuel for the person's own consumption." However, the evidence does not demonstrate that petitioner received the motor fuel at issue for its own consumption. Rather, the evidence demonstrates that petitioner purchased the fuel and placed it in vehicles to be shipped to dealerships. Petitioner never consumed the fuel at issue because it never used the fuel to power the vehicle.

Petitioner also asserts that it was an "industrial end user" as that term was defined in MCL 207.1003(o). MCL 207.1003(o) defined "industrial end user" as "a person who incorporates motor fuel into, or uses motor fuel incidental to, industrial processing." However, the evidence does not demonstrate that petitioner used the motor fuel at issue "incidental to" industrial processing. The evidence is clear that petitioner never *used* the fuel. Nor does petitioner cite on appeal (nor did it in the Tax Tribunal) any evidence demonstrating that it incorporated the motor fuel into industrial processing. This Court will not search the record for factual support for petitioner's claims. *Derderian v Genesys Health Care Systems*, 263 Mich App 364, 388; 689 NW2d 145 (2004). "It is axiomatic that where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court." *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

> A person may otherwise seek a refund for tax paid under this act on motor fuel pursuant to section 30 of 1941 PA 122, MCL 205.30. However, the claim for refund shall be filed within 18 months after the date the motor fuel was purchased.

Indeed, § 32 provides that if a person uses motor fuel "for a nontaxable purpose as described in sections 33 to 47, the person may seek a refund of the tax." MCL 207.1032. It further states that the procedure for doing so is set forth in § 48, MCL 207.1048. Thus, we agree that § 47 sets forth separate grounds for a refund, namely those found in MCL 205.30, which provides in relevant part:

> (1) The department shall credit or refund an overpayment of taxes; taxes, penalties, and interest erroneously assessed and collected; and taxes, penalties, and interest that are found unjustly assessed, excessive in amount, or wrongfully collected with interest at the rate calculated under section 23 for deficiencies in tax payments.

Petitioner asserts that, under § 47, it should be refunded motor fuel tax paid "in connection with a nontaxable use of motor fuel . . . ." Petitioner thus argues that, regardless of whether it was an end user, it is entitled to a refund under § 47 because it used the fuel for a nonhighway purpose. However, if this were true, it would render §§ 33 and 39 meaningless because anyone who used the fuel for a nonhighway purpose would be entitled to a refund under § 47, regardless of whether they were an end user as required by §§ 33 and 39. This Court must avoid a construction that would render any part of a statute surplusage or nugatory. *Koontz, supra* at 312. Thus, we do not read § 47 to permit a refund of motor fuel tax paid on fuel used for any nonhighway purpose. Rather, the refund permitted in § 47 is limited to those instances listed in MCL 205.30, i.e., (1) overpayment, (2) erroneous assessment,

(3) unjust assessment, (4) excessive amount, or (5) wrongful collection. These circumstances encompass overcharging as a result of a clerical, computational, procedural, or human error, or the like—not simply any tax charged on fuel used for any nonhighway purpose.

In further support of its position that a refund under § 47 is appropriate whenever tax is paid on motor fuel that is not used on Michigan roads or highways, petitioner relies on MCL 207.1008(5)(a) and (c). In MCL 207.1008(5), the Legislature specifically stated the intent of the MFTA:

> (a) To require persons who operate a motor vehicle on the public roads or highways of this state to pay for the privilege of using those roads or highways.

> (b) To impose on suppliers a requirement to collect and remit the tax imposed by this act at the time of removal of motor fuel unless otherwise specifically provided in this act.

> (c) To allow persons who pay the tax imposed by this act and who use the fuel for a nontaxable purpose to seek a refund or claim a deduction as provided in this act.

> (d) That the tax imposed by this act be collected and paid at those times, in the manner, and by those persons specified in this act.

Petitioner's reliance on subsections 5(a) and (c) is misplaced. Although MCL 207.1008(5)(a) and (c) set forth the general intent of the MFTA, they do not provide that a refund is appropriate whenever motor fuel tax is paid on motor fuel that is not used on Michigan roads or highways. Further, MCL 207.1008(5)(c) states the Legislature's intent "[t]o allow persons who pay the tax imposed by this act and who use the fuel for a nontaxable purpose to seek a refund or claim a deduction *as provided in this act.*" (Emphasis added.) MCL 207.1032 states that a person

may seek a refund if the person pays the tax imposed by the MFTA and "uses the motor fuel for a nontaxable purpose *as described in sections 33 to 47 . . . .*" (Emphasis added.) Petitioner has not created a genuine issue of material fact regarding whether it qualifies for a refund under §§ 33 to 47 of the MFTA.[6]

### C. DUE PROCESS

Petitioner also contends that the Tax Tribunal erred in dismissing its due process claim. We again disagree.

Petitioner contends that, pursuant to *McKesson Corp v Div of Alcoholic Beverages & Tobacco,* 496 US 18; 110 S Ct 2238; 110 L Ed 2d 17 (1990), the state must provide a taxpayer with a meaningful opportunity to withhold contested tax assessments and to challenge their validity in a predeprivation hearing *or* accord the taxpayer meaningful backward-looking relief to rectify any unconstitutional deprivation. Petitioner further asserts that, pursuant to *Reich v Collins,* 513 US 106; 115 S Ct 547; 130 L Ed 2d 454 (1994), Michigan cannot hold out as its postdeprivation remedy a right to claim a refund only to assert that no such refund opportunity exists.

Petitioner asserts that no predeprivation remedy exists under the MFTA because the tax is payable at the time of sale and that no postdeprivation remedy exists because it cannot "obtain a refund of tax paid with respect to nontaxable activities . . . ." As discussed

---

[6] Petitioner also briefly mentions that respondent initially denied its request for a refund on the basis that petitioner is an exporter of motor fuel that is not properly licensed. Petitioner asserted in the Tax Tribunal, and maintains on appeal, that it is not an exporter of motor fuel. However, the Tax Tribunal agreed with petitioner and determined that it is not an exporter of motor fuel under the circumstances presented here. Therefore, this issue is not appealable by petitioner. MCR 7.203(A); *Rymal v Baergen,* 262 Mich App 274, 318-319; 686 NW2d 241 (2004).

above, the MFTA does provide that refunds are available under the specified circumstances set forth in §§ 33 to 47. It also provides a procedure by which parties may obtain those refunds in § 48. Therefore, because it offers a meaningful postdeprivation remedy, the MFTA does not violate due process requirements. The mere fact that petitioner does not *qualify* for a refund under any provision of the MFTA does not amount to a due process violation.

Affirmed.