# STATE OF MICHIGAN

# COURT OF APPEALS

PAMPA LANES, INC.,

Petitioner-Appellant,

v

CITY OF WARREN,

Respondent-Appellee.

UNPUBLISHED
October 19, 2017

No. 334152
Tax Tribunal
LC No. 2014-002721

Before: TALBOT, C.J., and O'CONNELL and O'BRIEN, JJ.

PER CURIAM.

Petitioner appeals as of right an order from the Michigan Tax Tribunal (MTT) dismissing petitioner's case, in which it contested respondent's valuation of its real property. We affirm.

Petitioner first argues that the MTT acted outside its statutory authority by requiring petitioner to either pay its back taxes or face default and dismissal. We disagree. "This Court's review of a decision by the [MTT] is limited." *Trinity Health-Warde Lab, LLC v Charter Twp of Pittsfield*, 317 Mich App 629, 632; 895 NW2d 226 (2016). "If the facts are not disputed and fraud is not alleged, our review is limited to whether the [MTT] made an error of law or adopted a wrong principle." *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 527-528; 817 NW2d 548 (2012). "The [MTT's] factual findings are final if they are supported by competent, material, and substantial evidence on the whole record." *Id*. at 527. "Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence required in most civil cases." *Brunt Assoc, Inc v Dep't of Treasury (On Reconsideration)*, 318 Mich App 449, 457; 898 NW2d 256 (2017) (quotations omitted). "This Court reviews de novo the interpretation and application of tax statutes." *Trinity Health-Warde Lab*, 317 Mich App at 632.

"[T]he express powers of the [MTT] are those authorized by statute[.]" *Marie De Lamielleure Trust v Dep't of Treasury*, 305 Mich App 282, 288; 853 NW2d 708 (2014). Thus, in order to determine whether the MTT acted outside of its statutory authority, we must interpret the pertinent statutes. The Michigan Supreme Court recently restated the fundamental principles for statutory interpretation:

> In interpreting [a statute], our goal is to give effect to the Legislature's intent, focusing first on the statute's plain language. In doing so, we examine the statute as a whole, reading individual words and phrases in the context of the entire

-1-

legislative scheme. When a statute's language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. [*Ronnisch Constr Group v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016) (internal citations omitted).]

In dismissing petitioner's case, the MTT relied on MCL 205.732, which provides in pertinent part that the MTT's powers include:

(a) Affirming, reversing, modifying, or remanding a final decision, finding, ruling, determination, or order of an agency.

(b) Ordering the payment or refund of taxes in a matter over which it may acquire jurisdiction.

(c) Granting other relief or issuing writs, orders, or directives that it deems necessary or appropriate in the process of disposition of a matter over which it may acquire jurisdiction.

Included within these powers is the ability to dismiss a case as a sanction. See *Grimm v Dep't of Treasury*, 291 Mich App 140, 148-150; 810 NW2d 65 (2010).

Here, petitioner owed property taxes from 2013 through 2015. Pursuant to MCL 205.732, the MTT was authorized by statute to (1) order petitioner to pay those back taxes, see MCL 205.732(b), and (2) dismiss petitioner's case,[1] see *Grimm*, 291 Mich App at 148-150. On appeal, petitioner argues that, pursuant to MCL 205.743(1), the MTT was not permitted to dismiss petitioner's case due to failure to pay back taxes. MCL 205.743(1) provides, "If the date set by law for the payment of taxes has passed, the tribunal shall not make a final decision on the entire proceeding until the taxes are paid. This requirement may be waived at the tribunal's discretion."[2] Petitioner's main argument is that MCL 205.743(1) only allows the MTT to withhold a "final decision," and it does not allow the MTT to dismiss a case for failure to pay taxes. However, petitioner's reading of MCL 205.743(1) improperly disregards the MTT's general statutory authority described in MCL 205.732.

"Because the various statutory provisions implicated in this case relate to the same subject matter, the terms of the provisions should be read *in pari materia*." *NL Ventures VI Farmington, LLC v Livonia*, 314 Mich App 222, 235; 886 NW2d 772 (2016) (citation and quotation marks omitted). "The general rule of *in pari materia* requires courts to examine a statute in the context of related statutes." *City of Holland v Consumers Energy Co*, 308 Mich

---

[1] We address the merits of the MTT's decision to dismiss petitioner's case later in this opinion.

[2] We recognize that the use of the word "shall" typically establishes a mandatory provision, see *In re Harper*, 302 Mich App 349, 355; 839 NW2d 44 (2013), but note that the second sentence of MCL 205.743(1) clearly renders the first sentence optional. Stated differently, the MTT "may" waive the requirement to pay taxes before rendering a final decision, or it "may" refuse to issue a final decision absent the payment of owed taxes.

App 675, 687; 866 NW2d 871 (2015) (citation and quotation marks omitted). Stated differently, "[i]n attempting to find a harmonious construction of the statutes, we will regard all statutes upon the same general subject-matter as part of one system . . . ." *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 652; 852 NW2d 865 (2014) (citation and quotation marks omitted; second alteration in original). Even statutes that have an "apparent conflict[] should, so far as reasonably possible, be construed in harmony with each other, so as to give force and effect to each . . . ." *Id*. (citation and quotation marks omitted; alteration in original).

It stands to reason that, when reading the statutes at issue in this case *in pari materia*, if a party fails to pay owed taxes and the MTT refuses to waive the issue, then the MTT has the power to either (1) withhold "a final decision on the entire proceeding until the taxes are paid," MCL 205.743(1), or (2) grant other relief that it deems necessary or appropriate, MCL 205.732, including dismissal of the case as a sanction, *Grimm*, 291 Mich App at 148-150. Given the broad range of powers provided by MCL 205.732, it would be illogical and unharmonious for the MTT to be *required* to maintain a case on its docket indefinitely while waiting on a tax payment that may never come.

The particular facts of this case show why the Legislature allowed the MTT this discretion. The MTT here was faced with petitioner, who exhibited an apparent history of failing to pay its taxes. According to respondent, petitioner contested its taxes in 2011 and 2012, which led to a dispute between the parties that eventually ended when they entered into a consent judgment. But following the consent judgment, petitioner did not pay its taxes for the 2013 tax year,[3] and it later contested its taxes for 2014 and 2015 which led to its filing of this case. By the time the MTT entered its original order requiring petitioner to pay its taxes, petitioner's 2013 property taxes were delinquent and it was facing potential foreclosure. Consequently, the MTT was reasonably under the belief that, no matter what relief it might grant to petitioner, the judgment would either not be paid or, if the 2013 foreclosure went through, would be rendered moot. The MTT, as is apparent from the record, deemed it necessary to give petitioner a timeframe to pay its back taxes within, see MCL 205.732, likely to avoid the possibility of having the parties engage in a costly trial, the result of which may have been irrelevant.[4] Accordingly, because the MTT had the statutory authority to act as it did, there was no legal error committed by the MTT providing a set time for petitioner to either pay its back taxes or face default or dismissal.

Petitioner next argues that the MTT abused its discretion by dismissing its case without sufficiently considering the factors enumerated by this Court in *Grimm*, 291 Mich App at 149. We disagree. "We review for an abuse of discretion a decision by the [MTT] to dismiss a

---

[3] Petitioner, for whatever reason, did not contest its 2013 taxes. Rather, it simply did not pay them.

[4] For those same reasons—concern regarding petitioner's ultimate ability to pay any of the taxes regardless of the outcome of the case, and the possibility of the issues in the case becoming moot—the MTT did not abuse its discretion in refusing to waive the requirements of MCL 205.743(1).

petition for failure to comply with its rules or orders." *Id*. "The abuse-of-discretion standard recognizes that there will be circumstances in which there will be more than one reasonable and principled outcome, and selection of one of these principled outcomes is not an abuse of discretion." *Id*.

In *Grimm*, this Court held that "before imposing the drastic sanction of dismissal" the MTT must consider the factors previously espoused in *Vicencio v Jaime Ramirez, MD, PC*, 211 Mich App 501, 507; 536 NW2d 280 (1995). *Grimm*, 291 Mich App at 149-150. "When considering the sanction of dismissal, the record should reflect that the [MTT] gave careful consideration to the factors involved and considered all its options in determining what sanction was just and proper in the context of the case before it." *Id*. at 150 (citation and quotation marks omitted). The factors that must be considered before dismissal are as follows:

> "(1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice." [*Id*. at 149, quoting *Vicencio*, 211 Mich App at 507.]

Petitioner initially brought this case before the MTT to appeal respondent's assessment and taxation of petitioner's real property for the 2014 tax year. Before the MTT heard the case, however, petitioner sought leave to amend the petition to include a similar appeal for the 2015 tax year. That motion was granted by the MTT. As the case proceeded, both parties provided the MTT with a prehearing statement. Petitioner alleged that it had paid the taxes in question, while respondent alleged that petitioner had not. The MTT requested that the parties clarify the issue, and petitioner submitted a letter clarifying that it had not paid property taxes since 2013. Respondent then moved the MTT to postpone the hearing pending petitioner's payment of those taxes. Respondent was concerned because petitioner had also failed to pay its taxes from 2013, it had not appealed those taxes to the MTT, and, as a result, Macomb County was in the process of foreclosing on petitioner's property. Petitioner failed to file a response to respondent's motion, and on February 8, 2016, the MTT entered an order requiring petitioner to pay all back taxes within 21 days or face default and dismissal. On February 10, 2016, petitioner moved for reconsideration or clarification of the order. One day later, the MTT entered an order denying petitioner's motion for reconsideration and clarifying that petitioner had to pay, or enter into a payment plan for, all of its back taxes.

On March 1, 2016, during a telephone conference, petitioner informed the MTT that, although it had not yet paid its back taxes or entered into a payment plan, it did have a meeting scheduled with Macomb County officials to address that issue. The MTT entered an order that same day allowing petitioner an additional 30 days to fulfill the February 8, 2016 order. As of April 8, 2016, more than 30 days after the March 1 order extending petitioner's time to comply with the February 8 order, petitioner had not communicated any information regarding whether it entered into a payment plan or paid its taxes. As a result, respondent moved the MTT to dismiss petitioner's case for failure to follow the MTT's orders. Despite its lack of prior communication, petitioner responded by informing the MTT that it had paid its 2013 taxes and was in the process of refinancing in order to pay its 2014 and 2015 taxes. Petitioner did not explain why it waited

until respondent filed its motion to dismiss before informing the MTT of these developments. Nonetheless, in an order entered on April 15, 2016, the MTT recognized that petitioner had lessened any prejudice to respondent by paying its 2013 taxes, and the MTT allowed petitioner an additional 60 days to provide proof of either payment or a payment plan. But because petitioner had failed to comply with the MTT's previous orders, the MTT also found petitioner in default.

On April 19, 2016, before reaching any agreement with Macomb County or paying its remaining back taxes, petitioner moved the MTT to set aside the order of default. In its motion, petitioner did not contend that it had fulfilled the April 15, 2016 order, but rather suggested that the MTT should set aside the default because petitioner was acting in good faith and was simply unable to pay its taxes. The MTT denied the motion on May 4, 2016, reasoning that there had been no proof that petitioner had complied with the previous order by paying its back taxes or entering into a payment plan. When the 60-day extension expired, petitioner had still not submitted any evidence or documentation that it had paid its back taxes or had reached, or was about to reach, a payment plan. Consequently, on June 21, 2016, the MTT entered an order dismissing petitioner's case. In the order, the MTT examined the case's procedural history, cited to the *Grimm* factors, and reasoned as follows:

> Here, Petitioner has made no further attempt to cure the default, and Petitioner's failure to comply with the [MTT]'s Orders has established a history of deliberate delay and a history of refusing to comply with the [MTT]'s previous orders. As a result, giving careful consideration to the factors involved and considering all options in determining what sanction is just and proper, the [MTT] finds that dismissal is appropriate, and a lesser sanction would not be appropriate in light of Petitioner's history of noncompliance in this case.

After the MTT entered this order, petitioner brought a motion for reconsideration, in which it alleged that it had attempted to cure the default and comply with the MTT's order. Specifically, petitioner alleged that it did not pay its back taxes because it could not afford to do so, its plan to refinance had failed, and it was awaiting a decision on a loan from a bank. Petitioner asserted, without supporting documentation, that if the MTT set aside the default and dismissal, the bank would follow through with the loan and petitioner would pay the taxes within 10 days. The MTT denied the motion.

On appeal, petitioner argues that the MTT failed to properly and sufficiently analyze the *Grimm* factors and, therefore, dismissal was inappropriate. However, a review of the factors and the reasoning applied by the MTT show that the MTT complied with the requirements of *Grimm* before dismissing petitioner's case. In considering the procedural history of the case, the MTT did not abuse its discretion in determining that petitioner's consistent refusal to timely and adequately respond to the MTT's orders evidenced petitioner's " 'wilful' " violations of the MTT's order, " 'history of refusing to comply with previous' " orders, " 'history of deliberate delay,' " and lackluster " 'attempts to cure the defect.' " *Grimm*, 291 Mich App at 149, quoting *Vicencio*, 211 Mich App at 507.

Petitioner contends that the MTT wrongly analyzed these factors because petitioner's failure to pay its back taxes was due to financial inability to pay rather than any wrongful intent.

However, this argument is without merit for several reasons. First, petitioner misunderstands the difference between "wilful" and "accidental" as used in the *Grimm* factors. In analyzing whether the failure to obey a court order was "wilful," this Court has held that "[t]o be willful, the failure need not be accompanied by wrongful intent," but rather "[i]t is sufficient if it is conscious or intentional, not accidental or involuntary." *Edge v Ramos*, 160 Mich App 231, 234; 407 NW2d 625 (1987). Here, petitioner's inability to pay its back taxes does not mean that its failure to do so was "accidental" and not "wilful." See *id*. Further, petitioner's argument misstates the MTT's order; the MTT stated that it would have accepted proof of a payment plan with Macomb County regarding the back taxes. While petitioner may have been unable to pay the full sum of its back taxes, there was no explanation from petitioner regarding its failure to reach a payment plan with Macomb County. Therefore, petitioner's failure to comply with the MTT's orders was a "conscious" decision that, although not accompanied by a wrongful intent, was certainly not "accidental or involuntary." *Id*. Accordingly, the MTT properly decided that *Grimm* factors 1, 2, 4, and 6, all weighed in favor of dismissal.[5] See *Grimm*, 291 Mich App at 149.

The third factor required the MTT to consider " 'the prejudice to the opposing party.' " *Id*., quoting *Vicencio*, 211 Mich App at 507. Although the MTT's order of dismissal did not reference this factor, the MTT did so in a previous order. Specifically, the MTT reasoned that petitioner's payment of the 2013 taxes had lessened the prejudice to respondent, resulting in the MTT's 60-day extension for petitioner. However, just because the prejudice was lessened does not mean that there was no prejudice. As discussed earlier, absent the MTT's orders requiring petitioner to pay its back taxes, respondent would have been required to litigate a case that could have ended with an irrelevant judgment. Specifically, there was a reasonable probability that, considering the record, even if petitioner had succeeded in its appeal to the MTT, it still would not have been able to pay its lessened taxes. Allowing petitioner to continue to litigate when it provided no proof of its ability to pay any tax award would certainly have prejudiced respondent. Stated differently, by requiring petitioner to pay its back taxes before going forward with the case, the MTT was lessening the chance that respondent would be prejudiced by having to try the case, obtain a result, and then have that result rendered moot if petitioner still failed to pay and Macomb County was forced to foreclose on the property. Therefore, the MTT's reasoning regarding prejudice to respondent in the previous order, implied within its final order, was not in error because allowing petitioner's case to continue would have prejudiced respondent. See *Grimm*, 291 Mich App at 149.

The seventh and last *Grimm* factor required the MTT to consider " 'whether a lesser sanction would better serve the interests of justice.' " *Id*., quoting *Vicencio*, 211 Mich App at 507. The MTT reasoned that "a lesser sanction would not be appropriate in light of [p]etitioner's history of noncompliance in this case." The record supports the MTT's reasoning. The predominant issue considered by the MTT was that, due to petitioner's history of failing to pay taxes, the MTT and respondent would have to spend money trying a case that might end up being

---

[5] Because the MTT did not enter any other orders that required substantive compliance by petitioner, the fifth factor, requiring consideration of "the degree of compliance with other parts of the court's orders[,]" was irrelevant. *Grimm*, 291 Mich App at 149.

moot or irrelevant. If petitioner would ultimately fail to pay any award ordered by the MTT, it would be pointless to try the case. As such, ordering a different sanction, such as ordering petitioner to pay the costs and attorney fees of respondent, would not have addressed the ultimate issue—that petitioner needed to pay its taxes before the case could proceed. After the MTT had provided petitioner with numerous chances and extensions to fulfill the orders, and observing that petitioner either would not or could not fulfill the MTT's orders, the MTT's only option was to dismiss the case. As such, the MTT's reasoning that the last factor weighed in favor of dismissal was not incorrect. See *Grimm*, 291 Mich App at 149-150. Accordingly, after considering the *Grimm* factors and the procedural history of the case, the MTT's decision to dismiss the case was not outside the range of reasonable and principled outcomes. *Id*. at 149.

Petitioner next argues that the MTT's requirement that petitioner pay its back taxes before proceeding with the case was an effective denial of petitioner's due process rights. We disagree. Constitutional questions are reviewed de novo. *Fluor Enterprises, Inc v Revenue Div, Dep't of Treasury*, 477 Mich 170, 185; 730 NW2d 722 (2007).

"The owner of real property is entitled to the protection of constitutional due process with respect to the assessment and collection of property taxes." *Spranger v City of Warren*, 308 Mich App 477, 482-483; 865 NW2d 52 (2014). "Due process is a flexible concept, the essence of which requires fundamental fairness." *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). "At a minimum, due process requires notice and an opportunity to be heard in a meaningful time and manner." *Spranger*, 308 Mich App at 483. This Court has held that, in non-judicial proceedings, "[t]he essentials of procedural due process are adequate notice, an opportunity to be heard, and a fair and impartial tribunal." *Hughes v Almena Twp*, 284 Mich App 50, 69; 771 NW2d 453 (2009).

On appeal petitioner does not contend that it lacked notice or that the MTT was not fair and impartial. Rather, petitioner asserts that it was not provided an opportunity to be heard. See *id*. Specifically, petitioner argues that the dismissal of a claim appealing a property tax due to the failure to pay that property tax is an effective denial of an opportunity to be heard. However, "states 'are afforded great flexibility in satisfying the requirements of due process in the field of taxation.' " *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 29; 703 NW2d 822 (2005), quoting *Nat'l Private Truck Council, Inc v Oklahoma Tax Comm*, 515 US 582, 587; 115 S Ct 2351; 132 L Ed 2d 509 (1995). Indeed, this Court has held that "determining what process is due in a particular case depends on the nature of the proceeding, the risks and costs involved, and the private and governmental interests that might be affected." *Id*. at 29. The United States Supreme Court, in considering a similar issue, reasoned as follows:

> Because exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause. The State may choose to provide a form of "predeprivation process," for example, by authorizing taxpayers to bring suit to enjoin imposition of a tax prior to its payment, or by allowing taxpayers to withhold payment and then interpose their objections as defenses in a tax enforcement proceeding initiated by the State. However, whereas [w]e have described the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing before he is deprived of any

significant property interest, *it is well established that a State need not provide predeprivation process for the exaction of taxes.* Allowing taxpayers to litigate their tax liabilities prior to payment might threaten a government's financial security, both by creating unpredictable interim revenue shortfalls against which the State cannot easily prepare, and by making the ultimate collection of validly imposed taxes more difficult. To protect government's exceedingly strong interest in financial stability in this context, we have long held that a State may employ various financial sanctions and summary remedies, such as distress sales, in order to encourage taxpayers to make timely payments prior to resolution of any dispute over the validity of the tax assessment. [*McKesson Corp v Div of Alcoholic Beverages & Tobacco*, 496 US 18, 36-37; 110 S Ct 2238; 110 L Ed 2d 17 (1990) (internal citations and quotation marks omitted; emphasis added).]

Furthermore, this Court, relying on *McKesson*, has held that due process does not require that Michigan "provide a taxpayer with a meaningful opportunity to withhold contested tax assessments and to challenge their validity in a predeprivation hearing." *DaimlerChrysler Corp v Dep't of Treasury*, 268 Mich App 528, 540-541; 708 NW2d 461 (2005).

In this case, the MTT refused to provide petitioner with a predeprivation hearing regarding the assessed value of petitioner's real property; the MTT was prepared to provide petitioner with a hearing on the merits of its case, but only after petitioner paid the taxes it owed. Petitioner does not allege that the MTT's procedures for after petitioner's taxes were paid were somehow in violation of petitioner's due process rights. Rather, petitioner's only argument is that the MTT violated its due process rights by requiring petitioner to pay the taxes before having its case heard. In *DaimlerChrysler*, 268 Mich App at 540-541, and *McKesson*, 496 US at 36-37, this Court and the United States Supreme Court held that due process did not require predeprivation proceedings so long as the postdeprivation proceedings were sufficient. Accordingly, because petitioner only alleges that the MTT violated its due process rights by failing to hold a predeprivation hearing, petitioner's argument is without merit. See *DaimlerChrysler*, 268 Mich App at 540-541; *McKesson*, 496 US at 36-37.

Lastly, petitioner alleges that the MTT's procedure violated the Equal Protection Clauses of the Michigan and United States Constitutions. Again, we disagree. "The essence of the Equal Protection Clauses is that the government not treat persons differently on account of certain, largely innate, characteristics that do not justify disparate treatment." *Crego v Coleman*, 463 Mich 248, 258; 615 NW2d 218 (2000). "While the Equal Protection Clauses require that persons in similar circumstances be treated alike, those things which are different in fact or opinion [are not required] to be treated in law as though they were the same." . *Electronic Data Sys Corp v Twp of Flint*, 253 Mich App 538, 551; 656 NW2d 215 (2002) (*EDS*) (alteration in original; citation and quotation marks omitted).

In this case, there is no dispute that the rational basis test applies. "Under rational-basis review, courts will uphold legislation as long as that legislation is rationally related to a legitimate government purpose." *Crego*, 463 Mich at 259. "To prevail under this standard, the challenger must show that the legislation is arbitrary and wholly unrelated in a rational way to the objective of the statute." *EDS*, 253 Mich App at 552 (citation and quotation marks omitted).

As previously stated, the government has an "exceedingly strong interest in financial stability in [the] context" of "exaction of taxes." *McKesson*, 496 US at 38. Specifically, allowing everyone to engage in a predeprivation review of taxes "might threaten a government's financial security, both by creating unpredictable interim revenue shortfalls against which the State cannot easily prepare, and by making the ultimate collection of validly imposed taxes more difficult." *Id*. Therefore, in the case before us, the government had a legitimate interest in requiring petitioner to pay its taxes before holding a hearing to review whether the taxes were properly levied. *Id*.

Petitioner has failed to show that the challenged "legislation is arbitrary and wholly unrelated in a rational way to the objective of the statute." *EDS*, 253 Mich App at 552. Petitioner alleges that the wording of MCL 205.743(1) permits the MTT to require some taxpayers to pay their taxes before hearing the case, while allowing other taxpayers to proceed with their case before paying. While the MTT is permitted this discretion, there is no evidence that the MTT's application of the statute was "arbitrary" or "wholly unrelated in a rational way to the objective of the statute." *Id*. Rather, the MTT's application of MCL 205.743(1) in the present case exhibited the exact purpose behind the statute. The MTT was presented with petitioner, who had not paid its property taxes in 2013 and was contesting its 2014 and 2015 taxes. As such, petitioner had not paid any property taxes for three years. Considering this history, the MTT was properly concerned that allowing petitioner to proceed in the case without first paying its back taxes would "threaten [the] government's financial security . . . by making the ultimate collection of validly imposed taxes more difficult." *McKesson*, 496 US at 38. Accordingly, petitioner has failed to establish an Equal Protection Clause violation because it failed to show that the challenged "legislation [was] arbitrary and wholly unrelated in a rational way to the objective of the statute." *EDS*, 253 Mich App at 552.

Affirmed.

/s/ Peter D. O'Connell
/s/ Colleen A. O'Brien